UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────

DWIGHT DILBERT,
                                      **DECISION AND ORDER**
               Petitioner,                    **No. 05-CV-0858**
   -vs-

JAMES T. CONWAY, Superintendent,
Attica Correctional Facility

              Respondent.
───────────────────────────────────

## I. INTRODUCTION

Petitioner, Dwight Dilbert ("Petitioner" or "Dilbert"), filed a timely petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction. Petitioner was convicted, following a jury trial, of depraved indifference murder (N.Y. Penal Law ("Penal Law") §125.25 [2]), and aggravated criminal contempt (Penal Law 215.52). Judgment was entered on May 24, 2001, in New York Supreme Court, Erie County (Forma, J.). Petitioner's conviction was unanimously affirmed by the Appellate Division, Fourth Department, and leave to appeal to the New York State Court of Appeals was denied. People v. Dilbert, 1 A.D.3d 967 (4th Dept. 2003), *leave denied* 1 N.Y.3d 626 (N.Y. 2004).

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

By indictment number 99-2132-001, Petitioner was charged with one count each of intentional murder in the second degree (Penal

-1-

Law 125.25 [1]), depraved indifference murder[1], and aggravated criminal contempt, arising out of the following incident. In the late night, early morning hours on October 18-19th, 1999, Buffalo City Police Officers were called to a Burger King Restaurant on Downing and South Park Streets in Buffalo, New York. (T. 225)[2]. Petitioner had called the police to meet him at the Burger King to "check the welfare" of Stacy Bley, a woman with whom he shared a child. (T. 225-6). Petitioner was concerned because Bley had not met him at a Wilson Farms store as they had arranged. Id. Officers Robert Bigelow and David Acosta agreed to go to Bley's apartment at 12 Latona Court to check her welfare. (T. 226-7). The officers banged on the door with there flashlights and waited for several minutes, but Bley did not respond. (T. 228-9). They returned to the Burger King and told Petitioner to go home and try to contact Bley tomorrow. (T. 229).

Approximately thirty to forty minutes later, police received another call to check Bley's welfare. (T. 230). This time, Petitioner informed police that he had gone to 12 Latona Court and noticed a back window open. (T. 230-1). Officers Bigelow, Acosta, and Lieutenant Neil Shropshire then went back to Bley's apartment.

---

[1] Depraved indifference murder is murder in the second degree "[u]nder circumstances evincing a depraved indifference to human life, [where a person] recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person[.]" Penal Law 125.25[2].

[2] "T." refers to the state court trial transcript.

(T. 232-3). Bigelow stepped on a ledge and used his flashlight to look into the open back window, and saw Bley's body laying naked on the bedroom floor beneath the window, with a telephone cord tied around her right leg attached to a linen closet in the hall and an extension cord tied around her neck connected to the closet rod in the bedroom. (T. 234-8). The Officers then went to the front, kicked in the door, and found Bley's daughter in another bedroom. (T. 234-7).

An autopsy revealed that Bley died of strangulation requiring approximately five or six minutes of pressure. (T. 707-722). DNA evidence revealed that Petitioner had sex with Bley no more that 24 hours from the time her body was found. (T. 695, 755-61, 970-1). Fiber analysis revealed that fibers from the clothing Petitioner wore that evening were on Bley's clothing and in Bley's apartment, and fibers from a green velour blanket in Bley's apartment were on Petitioner's clothing. (T. 659-70). In addition, several witnesses identified Petitioner's grey car parked in front of Bley's residence on October 18th, and one witness saw the defendant with Bley and her daughter outside the apartment at approximately 6:45 in the evening. (T. 400-04, 432).

Bley and Petitioner had a contentious and sometimes violent relationship. Petitioner had written Bley a letter almost two years before Bley was killed, accusing her of having a baby with another man and saying, "I haven't shit on you yet like I'm gonna

do!" and "Die slow my hoe, my plan will make sure you and your daughter don't grow no more." (T. 175-77). Approximately seven months before Bley was killed, Petitioner was arrested and charged with burglary and criminal mischeif for breaking through the rear window of Bley's apartment. (T. 198). Bley had scratches on her body and red marks in her neck area after the incident. (T. 199). Petitioner plead guilty to attempted burglary and an order of protection was issued in favor of Bley against Petitioner. (T. 203-6). Prior to sentencing on the attempted burglary charge, Petitioner met one of Bley's co-worker's at the Erie County Fair and said to her, "if I have to do some time behind her [Bley], I'll kill the bitch," referring to his impending sentencing on the attempted robbery charge. (T. 189-193). The day Bley was killed, Petitioner called her at work. Bley's co-worker testified that Bley was agitated and said, "Dwight, why are you calling me here. Leave me the fuck alone. I don't want you to come over tonight. Why don't you just leave me alone. Dwight, don't come over. I don't want you, you fucking asshole. Leave me the fuck alone, Dwight." (T. 183).

Petitioner was convicted, following a jury trial, of depraved indifference murder and aggravated criminal contempt. Petitioner appealed his conviction to the Appellate Division, Fourth Department, raising the following issues: (1) the trial court erroneously admitted the letter written by Petitioner to Bley and

the testimony of the co-worker he spoke to at the Erie County Fair; (2) the verdict was against the weight of the evidence; (3) the sentence was unduly harsh and excessive; (4) ineffective assistance of trial counsel; and (5) prosecutorial misconduct for the failure to require the paramedics to testify at the grand jury proceeding, the failure to turn over a photo-array, and withholding an exculpatory DNA finding. The Appellate Division held that he was not denied a fair trial based on the trial court's decision to admit the threatening letter and the testimony of Bley's co-worker, because they were both evidence of motive and intent to kill; the verdict was not against the weight of the evidence; the sentence was not unduly harsh or excessive; he received effective assistance of counsel, and, in any event, he did not identify any errors that would render counsel's performance ineffective; the claim for prosecutorial misconduct in the grand jury was not in the record, and thus not reviewable on appeal, and the other claims of prosecutorial misconduct were not preserved for review and without merit. Dilbert, 1 A.D.3d at 967-8. Further leave to appeal was denied by the New York State Court of Appeals. People v. Dilbert, 1 N.Y.3d 626 (N.Y. 2004).

Petitioner then made a motion to vacate the judgment, pursuant to C.P.L.[3] § 440.10, arguing that he received ineffective assistance of counsel because counsel failed to preserve the

---

[3] New York Criminal Procedure Law

prosecutorial misconduct claims for appellate review. See Answer, Exhibit D[4]. By Memorandum and Order, dated October 26, 2004, Erie County Supreme Court (Forma, J.) denied Petitioner's motion because he failed to produce evidence to substantiate his claims and, in any event, he received meaningful representation and becuase the prosecution produced such overwhelming evidence of guilt, trial counsel's alleged errors did not have any effect on the outcome. See Answer, Exhibit D. While his first C.P.L. § 440.10 motion was pending, Petitioner sent the Supreme Court an amendment to the first motion, alleging that there was insufficient evidence to convict him of depraved indifference murder, in light of recent developments in New York law regarding the statute, because there was overwhelming evidence of his intent to kill, and a person can not be convicted of depraved indifference murder if he intended to kill the victim. See Answer, Exhibit D. By separate Memorandum and Order, dated November 2, 2006, Petitioner's motion was denied pursuant to C.P.L. § 440.10 (2)(c), because he could have brought the claim on direct appeal, but he did not. See Answer, Exhibit E. Petitioner claims that he raised both issues in his request for leave to appeal the decisions to the Appellate Division, however, his request was submitted in 2005, prior to the second decision. See Answer, Exhibit D, E; Pet. ¶ 16. Leave to appeal the 2004

---

[4] Respondent's Answer to Dilbert's petition for a writ of habeas corpus and accompanying exhibits.

C.P.L. § 440.10 decision was denied, and Petitioner did not later seek leave to appeal the second decision. See Answer, Exhibit D, E.

### III. GENERAL PRINCIPLES APPLICABLE TO HABEAS REVIEW

#### A.   The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254 (d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently that [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v.

Herbert, 342 F. 3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-410. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted). Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be

overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B.   Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that...the applicant has exhausted the remedies available in the courts of the State..." 28 U.S.C. §2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054, 115 S.Ct. 1436 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

**C.   The Adequate and Independent State Ground Doctrine**

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred.'" Dunham v. Travis, 313 F.3d 724, 729 (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)). "A habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is

actually innocent of the crime for which he has been convicted."
Id. (Citing Schlup v. Delo, 513 U.S. 298, 321 (1995); Murray v.
Carrier, 477 U.S. 478, 496 (1986)).

Although the Supreme Court "has repeatedly cautioned 'that the independent and adequate state law groud] doctrine applies to bar consideration on federal habeas of federal claims that have been defaulted under state law,'" Dunham, 313 F.3d at 729 (quoting Lambrix v. Singletary, 520 U.S. 518, 523 (1997) (emphasis added by Second Circuit), the Second Circuit has observed that "it is not the case 'that the procedural-bar issue must invariable be resovled first; only that is ordinarily should be[,]'" (quoting Lambrix, 520 U.S. at 525 (stating that bypassing procedural questions to reach the merits of a habeas petition is justified in rare situations, "for example, if the [underlying issues] are easily resolvable against the habeas petitioner, whereas the procedural bar issue involved complicated issues of state law")).

## IV. **PETITIONER'S CLAIMS**

### A. Prosecutorial Misconduct

Petitioner first claims that he was denied due process and a fair trial because the prosecutor failed to turn over a photo array and failed to timely inform defense counsel that the murder weapon was contaminated by a forensic technician. Pet. ¶ 22A and supporting Memorandum of Law. Petitioner raised these claims on direct appeal. The Appellate Division held that the issues were

-10-

not preserved for appellate review and, in any event, without merit. Dilbert, 1 A.D.3d at 968, *leave denied* 1 N.Y.3d 626. Because the Appellate Division's decision rests on an adequate and independent state procedural ground, and because Petitioner has not established the requisite cause and prejudice, or a fundamental miscarriage of justice to overcome the procedural bar, his claim is denied. Grey v. Hoke, 933 F.2d 117, 120-21 (2nd Cir. 1991); See Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977). In any event, this court agrees with the Appellate Division, that Petitioner's claim lacks merit, because he has not shown any actual error or that he was prejudiced in any way.

Petitioner claims that an exculpatory photo array could have led to an acquittal, but it was not turned over to defense counsel or the jury, resulting in an unfair trial. However, defense counsel requested the photo array, and the court ordered the prosecutor to produce it, which presumably was done. (T. 421-22). Additionally, the photo array was not introduced into evidence, so the jury was not entitled to consider it in their deliberations. C.P.L. § 310.20 (1). With respect to the allegedly contaminated murder weapon, Petitioner claims the prosecutor did not reveal until trial that the DNA of a member of the forensic team was found on the murder weapon. Petitioner's defense counsel exhaustively cross-examined the witness presenting the DNA evidence, to the point where the witness stated, "I cannot say for certain that

Mr. Dilbert touched the electrical cord." (T. 795-821). Petitioner thus cannot claim that he was prejudiced by the allegedly untimely disclosure. Therefore, Petitioner claim is denied.

**B. Insufficient Evidence of Depraved Indifference Murder**

Petitioner's following three claims essentially consist of one claim[5], that there was insufficient evidence to convict him of depraved indifference murder, in light of recent New York State Court of Appeals decisions clarifying the difference between depraved indifference and intentional murder, because the evidence pointed to intentional murder, of which he was acquitted. Pet. ¶ 22 B, C, & D. Petitioner presented this claim in his second C.P.L 440.10 motion, which was denied because he failed to raise the issue on direct appeal pursuant to C.P.L. 440.10 (2)(c). See Answer, Exhibit E. Petitioner did not seek leave to appeal this order, and his claim is unexhausted. However, it is clear that he has forfeited his state court remedies because he could have raised the issue on direct appeal, but failed to do so. Grey, 933 F.2d at 120-21. Petitioner has not established the requisite cause and prejudice, or a fundamental miscarriage of justice to overcome the

---

[5] Ground 2: The state court failed to address the "conflation" of depraved indifference murder and intentional murder in this case; Ground 3: There was insufficient evidence to support a conviction for depraved indifference murder where the evidence points to intentional murder; Ground 4: The state's failure to produce sufficient evidence of depraved indifference murder (effectively) shifted the burden to the Petitioner to disprove the elements of the crime.

procedural bar. See Sykes, 433 U.S. at 87-91. Therefore, Petitioner's claims for habeas relief on this ground is denied.

## V. CONCLUSION

For the reasons stated above, Petitioner's request for habeas relief pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Further, because the issues raised in the petition are not the type that a court could resolve in a different manner, and because these issues are not debatable among jurists of reason, this Court concludes that the petition presents no federal question of substance worthy of attention from the Court of Appeals and, therefore, pursuant to 28 U.S.C. § 2253 and Fed. R. App. P. 22(b), this Court denies a certificate of appealability. The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

ALL OF THE ABOVE IS SO ORDERED.

s/Michael A. Telesca<br>MICHAEL A. TELESCA<br>United States District Judge

DATED: Rochester, New York
        October 28, 2009